IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

NATALIE SCHEIL,

Plaintiff,

v.

FRANK BISIGNANO, Commissioner of the Social Security Administration,

Defendant.

**4:25CV3248**

**MEMORANDUM AND ORDER**

Plaintiff Natalie Scheil ("Scheil") seeks judicial review of the final decision of defendant Frank Bisignano, Commissioner of the Social Security Administration ("Commissioner"), denying her claims for disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*. Now before the Court are Scheil's Motion for an Order Reversing the Commissioner's Decision (Filing No. 9) and the Commissioner's countervailing Motion to Affirm Commissioner's Decision (Filing No. 12). *See id.* § 405(g). For the reasons stated below, the Court denies Scheil's motion, grants the Commissioner's motion, and affirms the Commissioner's denial of benefits.

## I. BACKGROUND[1]

Born in 2002, Scheil has a high-school education and a relatively limited work history. Her past relevant work includes being a cashier and having a "composite job" in which she worked as a "hand packager and tile setter."

On October 26, 2022, Scheil applied for disability benefits alleging disability beginning a few days earlier. The Social Security Administration ("SSA") denied her

[1]Unless otherwise noted, the background is drawn from Scheil's factual statement (Filing No. 9-1), which the Commissioner does not dispute, and the decision of the Administrative Law Judge ("ALJ") that heard her case (Filing No. 7-2).

claim initially and upon reconsideration. On Scheil's request, the ALJ held a telephonic hearing on March 20, 2024, at which Scheil and an impartial vocational expert ("VE") testified. Scheil was represented by counsel.

At the hearing, Scheil testified about her past work (Filing No. 7-2) and her personal life. She explained how her bipolar, anxiety, depression, attention deficit hyperactivity disorder ("ADHD"), post-traumatic stress disorder ("PTSD"), and borderline personality disorder impacted her ability to work.[2] In particular, she discussed her anxiety and depression before and during work and the attendance issues they caused. She also stated that her anxiety can get so bad that she struggles to get out of bed, eat, think, or get even simple tasks done. Other days, she is able to get up, do housework and laundry, and go to the store. Most days (85%) are bad. Scheil further testified that her PTSD causes flashbacks, mood changes, and crying and that her ADHD makes it hard to focus on one task at a time.

The ALJ asked Scheil a few questions, then posed four hypotheticals to the VE. He first asked the VE to "assume a hypothetical individual of [Scheil's] age, education, and past work" as described during the hearing who "can work at all exertional levels except the individual can understand, remember, and carry out simple routine tasks that are not fast paced and do not have strict production demands." He further posed the individual "is limited to doing low-stress work defined as occasional decision-making and occasional changes in the work setting," "can have occasional contact with coworkers or supervisors" but "cannot have any contact with the public."

Based on the Dictionary of Occupational Titles and her experience, the VE opined the hypothetical individual could not do Scheil's past work but could do other work in the

[2]Scheil did not claim any physical impairments.

national economy. As examples, she said the individual could work as a laundry worker, cleaner industrial, or linen room attendant.

For the second hypothetical, the ALJ added the limitation "that the individual should not do any team or tandem work." The VE again opined the individual could do other jobs in the national economy. The answer was the same for the third hypothetical, which changed the exertion level to medium.

For the last hypothetical, the ALJ had the VE assume all the limitations from the third but added that "due to the combination of her impairments," the hypothetical individual (1) "would not be capable of maintaining concentration, persistence or pace to perform job duties" and (2) "would require an additional ten-minute break each hour and/or miss more than four days of work a month." The VE testified that "there would be no past work and no other work in the national economy." Scheil's counsel did not ask the VE any questions.

The hearing then ended. At Scheil's request, the ALJ agreed to hold the record open to allow her to provide supporting treatment notes from a provider who gave an opinion in support of Scheil's application for benefits.

On June 13, 2024, the ALJ denied Scheil's claims, concluding she was not disabled under the Act. On appeal, the Appeals Council found (Filing No. 7-2) that Scheil's stated reasons did "not provide a basis for changing the [ALJ's] decision," making the ALJ's decision the Commissioner's final decision. *See* 42 U.S.C. § 405(g); *Ross v. O'Malley*, 92 F.4th 775, 778 (8th Cir. 2024). Scheil now seeks review of that decision.

## II. DISCUSSION

### A. Standard of Review

Section 405(g) permits a claimant who is unsatisfied with the result of the SSA's five-step review process to seek judicial review of the final decision in federal court. *See*

*Smith v. Berryhill*, 587 U.S. 471, 476 (2019). To complete that review, the Court does "not reweigh the evidence," *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003), or retry the issues de novo, *see Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009). The Court "will affirm 'if the ALJ made no legal error and the ALJ's decision is supported by substantial evidence on the record as a whole.'" *Cropper v. Dudek*, 136 F.4th 809, 813 (8th Cir. 2025) (quoting *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (quoting *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014)).

"'[S]ubstantial evidence' is a 'term of art' used" to describe how the Court reviews an ALJ's factfinding. *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019). Its evidentiary threshold "is not high." *Id.* at 102-03 (noting the Supreme Court has famously described it as "more than a mere scintilla" (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938))). "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." *Montgomery v. O'Malley*, 122 F.4th 1059, 1063 (8th Cir. 2024) (quoting *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011). When an ALJ's factual findings are "supported by substantial evidence," they are conclusive. 42 U.S.C. § 405(g).

In applying the substantial-evidence standard, the Court must "consider evidence that both supports and detracts from the Commissioner's decision." *Nolen v. Kijakazi*, 61 F.4th 575, 577 (8th Cir. 2023). If the Court is able "to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [it] must affirm the denial of benefits." *Wiese*, 552 F.3d at 730 (quoting *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996)). The Commissioner's decision is at risk "only if it falls outside the available zone of choice." *Kraus*, 988 F.3d at 1024 (quoting *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006)).

**B. Eligibility for Benefits**

Scheil must be disabled under the Act to qualify for disability benefits. *See* 42 U.S.C. § 423(a)(1)(E); *Post v. Bisignano*, ___ F.4th ___, ___, No. 25-2081, 2026 WL

2545316, at *2 (8th Cir. Aug. 28, 2026). Disability means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The disability—not the impairment—must continue for at least 12 months. *See Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993). Scheil is disabled under the Act "only if h[er] . . . mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

### C. The Five-Step Process

The Act's implementing regulations "set forth a five-step, sequential process for determining whether a claimant is under a disability." *Swink v. Saul*, 931 F.3d 765, 769-70 (8th Cir. 2019); *see also* 20 C.F.R. § 404.1520(a). First, the Commissioner considers the claimant's "work activity, if any." 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaged in "substantial gainful activity," the Commissioner will find she is "not disabled" and will not go on to the next step. *Id.*

If the claimant is not engaged in "substantial gainful activity," the Commissioner moves to step two to evaluate "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 20 C.F.R. § 404.1520(a)(4)(ii), (c). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). The Commissioner can stop the analysis "at step two when an impairment or combination of impairments would have no more than a minimal effect on the claimant's ability to work." *Simmons v. Massanari*, 264 F.3d 751, 755 (8th Cir. 2001).

At step three, the Commissioner "determines based on the medical evidence whether the severe impairments meet or equal the criteria of a 'listed impairment,' which is presumed to be disabling." *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1 (listing of impairments). If the claimant has such an impairment that meets the duration requirement, she is considered disabled, regardless of her age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(iii), (d).

If the claimant's impairment is severe but does not meet or equal one of the listed impairments, the Commissioner moves on to step four to evaluate "whether the claimant has the residual functional capacity [("RFC")] to perform . . . her past relevant work." *Simmons*, 264 F.3d at 755; *see also* 20 C.F.R. § 404.1520(a)(4)(iv), 404.1545(a)(5)(i). A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). It is "based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [her] limitations." *Kraus*, 988 F.3d at 1024 (quoting *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (alteration in original)).

"[I]t is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). If the ALJ determines that the claimant has the RFC to perform her "past relevant work," she is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv).

If she does not, the burden of production shifts to the Commissioner at step five "to prove that there are other jobs in the national economy that the claimant can perform" given her age, education, and work experience.[3] *Simmons*, 264 F.3d at 755; *see also* 20 C.F.R.

[3] "The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five." *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

§ 404.1520(a)(4)(v),(f). If the claimant can adjust to other work, she is not disabled. If she can't, she is disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v), (g).

**D. The ALJ's Decision**

After carefully considering "the entire record" through the lens of this five-step process, the ALJ found Scheil "has not engaged in substantial gainful activity since" her alleged onset date. At step two, he determined Scheil had three severe impairments: bipolar disorder, ADHD, and PTSD. In other words, he found those impairments "significantly limit [Scheil's] ability to perform basic work activities" and "cause more than minimal limitation in her "ability to perform basic work activities." He noted the potential impact of her obesity but determined it does not meet that standard.

At step three, the ALJ concluded Scheil "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." In reaching that conclusion, he determined Scheil "has a mild limitation" with respect to "understanding, remembering or applying information" based on Scheil's function report and the psychological consultative examiner's notes.

In contrast, the ALJ found a moderate limitation in Scheil's ability to interact with others. He similarly found a moderate limitation as "to concentrating, persisting or maintaining pace" and as to "adapting or managing" herself.

In assessing Scheil's RFC at step four, the ALJ concluded her "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms" but decided her "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [his] decision." More specifically, the ALJ found a gap between some of Scheil's testimony about the severity of her impairments and the medical evidence.

Based on his "careful consideration of the entire record," the ALJ found that Scheil "has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the individual can understand, remember, and carry out simple, routine tasks that are not fast-paced and do not have strict production demands." He further found that "[s]he is limited to doing low stress work, defined as occasional decision-making and occasional changes in the work setting." As for social contact, he concluded that "[s]he can have occasional contact with coworkers or supervisors" but not "with the public."

Although those limitations prevented Scheil from performing her past work, the ALJ determined she could perform other "jobs that exist in significant numbers in the national economy," given her age, education, work experience, and RFC. On that basis, he decided Scheil was not disabled.

**E. Failure to Incorporate Limitations**

Scheil argues the ALJ reversibly erred as a matter of law either by failing to incorporate into her RFC certain limitations from earlier administrative medical findings as required by 20 C.F.R. § 404.1520c(a) or by failing to explain why he excluded them. In particular, she faults the ALJ for failing to incorporate opinions from Rebecca Braymen, Ph.D. ("Dr. Braymen") and Patricia Newman, Ph.D. ("Dr. Newman") that Scheil needed "superficial interaction" despite finding their opinions "partially persuasive" and "generally consistent with [her] documented mental health conditions."

In Scheil's view, her RFC therefore should not include "occasional interaction with coworkers and supervisors and no interaction with the public, rather than superficial interaction as opined." At the very least, she argues, the ALJ should have explained his failure to include that limitation because the terms superficial and occasional are not the same. *See, e.g.*, *Gann v. Berryhill*, 864 F.3d 947, 953 (8th Cir. 2017) (vacating the denial of benefits where "[n]either the RFC assessment nor the ALJ's hypothetical posed to the VE included [certain] adaptive limitations described by sources to whom the ALJ gave

'significant weight'"); *Batson v. Kijakazi*, No. 20-03251-CV-S-WBG, 2022 WL 501405, at *4 (W.D. Mo. Feb. 18, 2022). She wonders whether the ALJ appreciated the difference. *See*, *e.g.*, *Tiffany B. v. Kijakazi*, No. 22-CV-1227 (ECT/DLM), 2023 WL 3958424, at *4 (D. Minn. May 22, 2023), *rep. and recommendation adopted*, No. 22-CV-1227 (ECT/DLM), 2023 WL 3955348 (D. Minn. June 12, 2023); *Sue A.M. v. Comm'r of Soc. Sec.*, No. 3:22-CV-171, 2022 WL 14346260, at *4 (S.D. Ohio Oct. 25, 2022) (noting "[t]he terms 'occasional' and 'superficial' are not interchangeable"), *rep. and recommendation adopted sub nom. Sue A.M. v. Comm'r of the Soc. Sec. Admin.*, No. 3:22-CV-171, 2022 WL 17414973 (S.D. Ohio Dec. 5, 2022).

The Commissioner responds that "the ALJ was not required to adopt verbatim [the prior administrative medical findings] limitations or conduct a line-by-line assessment of every finding therein." As he sees it, "the ALJ harmonized these limitations with the other findings of record, including the rest of these doctors' opinions and other evidence regarding [Scheil's] mental functioning." He maintains any failure to include in the RFC what he calls "speculation" about Scheil's potential ability to interact on a deeper level despite finding no significant limitations in her ability to interact with coworkers "presents no basis for remand."

In support, the Commissioner relies on the recognition in § 404.1520c(b)(1) that "it is not administratively feasible for [the SSA] to articulate in each determination or decision how [it] considered all of the factors for all of the medical opinions and prior administrative medical findings in [a claimant's] case record." The Commissioner draws additional support from *McKinney v. O'Malley*, No. 23-3220, 2024 WL 1327965, at *1 (8th Cir. Mar. 28, 2024) (unpublished per curiam), in which the Eighth Circuit stated that an ALJ is "not required to adopt the exact limitations set forth in the opinions she found partially persuasive," and *Lane v. O'Malley*, No. 23-1432, 2024 WL 302395, at *1 (8th Cir. Jan. 26, 2024) (unpublished per curiam), in which it rejected a "manufactured inconsistency" between two psychologists' opinions that the claimant "could have 'superficial'

interactions" and "the ALJ's reference to 'occasional' interactions." In *Lane*, the Eighth Circuit "decline[d] to nitpick [the ALJ's] well-reasoned decision" on the entire record because he "addressed the quality of [the claimant's] workplace interactions" by limiting his team, tandem, and public-facing work. 2024 WL 302395, at *1. The Court reaches the same conclusion here.

The Court recognizes that part of Scheil's argument is a little different than *Lane*, but the foundational flaws are the same. In light of the record in this case and the ALJ's thorough decision, Scheil puts too much weight on the distinction between the frequency of possible social interactions and the psychologists' concerns about potential difficulties with depth in certain circumstances.[4] Like *Lane*, she simply has not shown a conflict that requires remand in this case. *See id.*

The ALJ carefully examined the medical evidence at issue and rendered a "well-reasoned opinion." *See id*. His statement that he found an opinion "partially persuasive" in some regards did not require him to incorporate every limitation or parse every statement in the cited opinion. *See Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022) (explaining ALJs are "free to accept some, but not all, of a medical opinion" and need not "'explicitly . . . reconcile every conflicting shred' of medical evidence" (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981))). That freedom is reflected in the ALJ's RFC and hypothetical questions. Scheil acknowledges as much but then effectively asks the ALJ to do just that to pass muster.

All told, the Court is not persuaded that the ALJ "ignore[d] specific limitations within a single opinion the ALJ found persuasive" as Scheil contends nor that Scheil's RFC

---

[4]Of course, the risk of potential difficulties arising during deeper social interactions gets smaller and smaller and then vanishes as frequency approaches zero. That happens here for any social interactions with the public as Scheil's RFC barred "any contact with the public." The ALJ's second and third hypotheticals similarly reflected an individual who "should not do any team or tandem work." *See Lane*, 2024 WL 302395, at *1

conflicted with Drs. Braymen's and Newman's opinions in such a way that require reversal or additional explanation. *See McKinney*, 2024 WL 1327965, at *1; *Lane*, 2024 WL 302395, at *1; *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011) (explaining that courts must "review the record to ensure that an ALJ does not disregard evidence or ignore potential limitations" but "do not require an ALJ to mechanically list and reject every possible limitation"). To the contrary, the Court finds the ALJ's evaluations of those opinions were both "appropriate and sufficiently explained" under the circumstances. *Kraus*, 988 F.3d at 1026.

## III. CONCLUSION

Having carefully reviewed the administrative record and the parties' respective submissions, the Court finds the Commissioner's denial of Scheil's application for disability benefits is legally sound and supported by substantial evidence on the record as a whole. *See id.* at 1023-24. Accordingly,

IT IS ORDERED:

1. Plaintiff Natalie Scheil's Motion for an Order Reversing the Commissioner's Decision (Filing No. 9) is denied.
2. The Commissioner's Motion to Affirm Commissioner's Decision (Filing No. 12) is granted, and his decision to deny benefits is affirmed.
3. Scheil's Complaint (Filing No. 1) is dismissed with prejudice.
4. A separate judgment will issue.

Dated this 9th day of October 2026.

BY THE COURT:

Robert F. Rossiter, Jr.
United States District Judge